
RECEIVED
MAR 3 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ALEA LONDON LIMITED | CIVIL ACTION NO. 04-0389 |
| VERSUS | JUDGE DOHERTY |
| CENTRAL GULF SHIPYARD, L.L.C. and MAXTEC, INC. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a motion for summary judgment filed on behalf of the plaintiff in the declaratory judgment action, ALEA London Limited, which seeks summary judgment declaring that:

- the commercial general liability policy issued by ALEA to Maxtec, Inc. does not provide contractual liability coverage for the claim of Central Gulf Shipyard, L.L.C. against Maxtec; and

- Central Gulf is not an additional insured under the ALEA policy under the facts of this case.

The motion is opposed by both Central Gulf and Maxtec. For the following reasons, ALEA's motion will be GRANTED IN PART AND DENIED IN PART.

## FACTS

The following facts have been identified by ALEA as relevant to its motion and are undisputed by the defendants.

On March 14, 2003, Global Industries Offshore, L.L.C. entered into a Marine Master Service Contract with Central Gulf to provide marine-related services. Pursuant to that contract, Global's vessel, the M/V AMBERJACK, was moved to Central Gulf's shipyard to allow Central Gulf to provide what has been described as "shipyard services" related to that vessel. Central Gulf obtained

the services of Maxtec to provide roustabouts for tank-cleaning operations aboard the M/V AMBERJACK. On May 7, 2003, Central Gulf and Maxtec had entered into a Master Service Contract related to such services. At no time pertinent to this case has there been a relevant contract between Maxtec and Global.

On October 3, 2003, Jarvis Lee was an employee of Maxtec. Mr. Lee alleges that he was injured while performing tank-cleaning services on the M/V AMBERJACK, and Mr. Lee has filed suit in the United States District Court for the Southern District of Texas, in which he seeks to recover damages from Global Industries Offshore, L.L.C. and Global Industries Limited [hereinafter sometimes referenced collectively as "Global"] as owners of the M/V AMBERJACK. Mr. Lee has not sued either Central Gulf or Maxtec.

Pursuant to the Marine Master Service Contract between itself and Global, Central Gulf has agreed to provide Global with a defense and indemnity as to Mr. Lee's claims. In turn, Central Gulf has made demand on Maxtec seeking indemnity from Maxtec for all sums it has paid, or will pay, on behalf of Global based upon the Marine Master Service Contract between Maxtec and Central Gulf (wherein Maxtec agreed to indemnify Central Gulf for sums expended upon liability arising out of any injury to one of Maxtec's employees while providing services to Central Gulf.)

ALEA issued a Commercial General Liability Policy to Maxtec, bearing number ALEA1517, with effective dates of January 6, 2003 to January 6, 2004.[1] The Common Policy Declarations in the ALEA Policy identify the named insured as Maxtec. Maxtec made a claim under the CGL Policy for coverage for Maxtec for Central Gulf's demand upon Maxtec for reimbursement of payments

---

[1] Commercial General Liability Coverage Form CG 00 01 07 98, attached as part of Exhibit D to Memorandum in Support of Motion for Summary Judgment [Doc. 22] [hereinafter referenced as "CGL Policy"].

made by Central Gulf on behalf of Global. The claim was denied by ALEA.

ALEA initiated this declaratory judgment action, naming both Maxtec and Central Gulf as defendants, and seeking a declaratory judgment:

(a) as to Maxtec, that "there is no coverage under the policy of insurance issued by ALEA that ALEA [sic] has no duty to defend and/or indemnify Maxtec for its contractual liability to [Central Gulf] for any amounts paid by [Central Gulf] for defense and indemnity of Global against the claims of Lee," and

(b) as to Central Gulf, that "there is no coverage under the policy of insurance issued by ALEA to defend, indemnify, and provide additional insured status to [Central Gulf] for [Central Gulf's] contractual liability to defend and indemnify to Global [sic] against the claims of Lee."[2]

In response to ALEA's complaint, Central Gulf filed a counterclaim against ALEA as the insurer of Maxtec, pursuant to the Louisiana Direct Action Statute, asserting that Maxtec was obligated by the Master Service Contract to produce and thus, did procure coverage from ALEA for "Maxtec's liability to Central Gulf" and, therefore, ALEA, as Maxtec's CGL insurer, has an obligation to indemnify Central Gulf and/or its insurer for costs incurred in defending and indemnifying Global in Mr. Lee's suit.[3]

**STANDARD OF REVIEW**

"A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of

---

[2] Complaint for Declaratory Judgment [Doc. 1], at ¶¶ XXXII, XXXIII.

[3] Answer, Counterclaim and Cross-Claim [Doc. 11], at 3.

the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. Proc. 56(a). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

Because the plaintiff has moved for summary judgment on its claims, the applicable burden of proof is slightly different than in the more usual case of a defendant's motion. "If the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, then the movant can satisfy its summary judgment burden by submitting evidentiary documents that establish all of the elements of the claim or defense. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate." Resolution Trust Corp. v. Northpark Joint Venture, 958 F.2d 1313, 1322 (5th Cir. 1992), *cert. denied sub. nom.* Dannis v. Resolution Trust Corp., 506 U.S. 1048 (1993). The pending motion involves a request by a plaintiff for issuance of a declaratory judgment in its favor concerning the coverage dispute between itself and both defendants. ALEA bears the ultimate burden of proof at trial as to the existence of coverage. Thus, under Resolution Trust Corp., ALEA must submit evidence supporting its claims; once that has been accomplished, the burden will shift to Central Gulf and Maxtec to demonstrate that summary judgment is inappropriate.

## LAW AND ANALYSIS

ALEA has moved for summary judgment on both of its claims. In support of its motion, ALEA submitted a Statement of Undisputed Material Facts. In response to the motion, both defendants agreed that the facts identified by ALEA are undisputed. The only attempt at creating

a genuinely disputed issue of fact was made by Maxtec, which submitted an affidavit as to its owner's intent in purchasing the CGL Policy from ALEA. This issue will be addressed below. Other than this question concerning Mr. Gaspard's intent, the facts are undisputed in this matter. It appears, then, that the motion presents a pure legal issue for consideration by this Court.

## I. Central Gulf's Status as an Additional Insured

ALEA asks this Court to find Central Gulf is not an additional insured under the CGL Policy as to Central Gulf's contractual liability to Global. The Complaint seeks, as to Central Gulf, a declaratory judgment that "there is no coverage under the policy of insurance issued by ALEA to defend, indemnify, and provide additional insured status to [Central Gulf] for [Central Gulf's] contractual liability to defend and indemnify to [sic] Global against the claims of Lee."[4] Central Gulf opposes this request arguing the issue is premature as no where has a claim been made by Central Gulf for contractual coverage or for coverage of any nature *for Central Gulf* under the ALEA policy. Central Gulf's objection is well-taken as no party argues Central Gulf has either, made a demand upon ALEA, or a claim against ALEA for coverage for Central Gulf, for contractual liability coverage or as an additional assured under the policy. Rather the only claim argued or made by Central Gulf is against ALEA as the insurer of Maxtec made pursuant to the Louisiana Direct Action Statute. Central Gulf argues Maxtec owes Central Gulf indemnity for Central Gulf's contractual obligations owed to Global. Central Gulf now has filed a counterclaim against ALEA *only as Maxtec's insurer*, and, in doing so, *has refrained from asserting its alleged status as an additional assured* under the CGL Policy. Central Gulf's claim against ALEA is expressly limited to asserting the existence of coverage to Maxtec for Maxtec's contractual obligation owed to Central Gulf:

---

[4] Complaint for Declaratory Judgment [Doc. 1], at ¶ XXXIII.

> Alea London Limited is the liability insurer of Maxtec and provided Maxtec general liability and contractual liability coverage at all material times. According to the terms and conditions of Alea London Limited's policy, it provides coverage to Maxtec for Maxtec's liability to Central Gulf and Alea London Limited is therefore liable under the Louisiana Direct Action Statute.[5]

In light of Central Gulf's decision not to assert its alleged status as an additional insured under the CGL policy, this Court has concern as to the wisdom of asserting jurisdiction over ALEA's request for a declaratory judgment as to an issue that is not at present in conflict. As this concern raises a question as to the advisability of this Court's exercise of jurisdiction over ALEA's request for a determination as to Central Gulf's status as an alleged insured under the facts of this case, this Court now raises *sua sponte* this question concerning its jurisdiction.

"The Declaratory Judgment Act, 28 U.S.C. § 2201(a), is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant. The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Sherwin-Williams Company v. Holmes County, 343 F.3d 383, 389 (5th Cir. 2003) (citations omitted).

When considering a declaratory judgment action, a district court must engage in a three-step inquiry, the first step of which calls for a determination of whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 895 (5th Cir. 2000). A case is not ripe for review – and, thus, not justiciable – if it is "abstract or hypothetical." Id.

---

[5] Answer, Counterclaim and Cross-Claim [Doc. 11], at 3, ¶ 5.

"As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests. Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." Id. at 896 (citations omitted). "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based. The fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action. However, in determining whether a justiciable controversy exists, a district court must take into account the likelihood that those contingencies will occur. Thus, the ripeness inquiry 'focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention.'" Id. at 897 (citations omitted).

The allegations contained in the declaratory judgment complaint gave this Court no reason to question the scope of the jurisdictional assertion made by ALEA. Moreover, this Court has no reason to believe that ALEA or its counsel were aware of the scope of the declaratory judgment requested by ALEA was subject to question. In the interim, however, Central Gulf has revealed intentions contrary to the assumption – implicit in the declaratory judgment complaint – that it intends to assert its alleged additional insured status under the ALEA CGL Policy. Moreover, Central Gulf's argument (as quoted above) suggests that it will not assert a claim based upon its alleged status as an additional insured unless the contingency occurs in which Mr. Lee asserts a tort-based claim, against Central Gulf directly and that assertion would be for direct tort liability of Central Gulf, not the disputed contractual liability coverage.

These developments create a serious question as to whether or not the dispute presented here by ALEA for adjudication, will ever arise. In the absence of any evidence suggesting that such a

dispute exists or is likely to exist, this Court finds that the issue is not ripe for review. The evidence and argument before this Court suggest that the issue is not "sufficiently likely to happen to justify judicial intervention" at this time and, therefore, is not ripe for adjudication. This Court finds that the issue of Central Gulf's status as an insured under the ALEA policy is not justiciable.

For these reasons, ALEA's claim for the issuance of a declaratory judgment concerning Central Gulf's status as an additional insured under the CGL Policy will be dismissed without prejudice.

## II. Coverage as to Maxtec's Contractual Obligation to Central Gulf

The following assumptions have been made by all parties hereto, have not been contested in the briefing and thus will be accepted by this Court for purposes of the motions before the Court:

- the Global/Central Gulf master service contract applies under the facts underpinning Mr. Lee's lawsuit and creates the obligation under which Central Gulf agreed to assume the defense and indemnity of Global;

- Central Gulf is not, at this point, exposed to any potential tort-based liability from Mr. Lee, Global, or anyone else arising out of Mr. Lee's accident;[6] and

- the Master Service Contract (Louisiana and Gulf of Mexico) between Central Gulf and Maxtec does create, on the part of Maxtec, an obligation to reimburse Central Gulf as it has demanded.

As has been noted, Mr. Lee asserted tort-based claims against Global. Global then made demand upon Central Gulf, based upon the Marine Master Service Contract between them, for defense and indemnity as to Mr. Lee's claims. Central Gulf accepted the tender and assumed Global's defense and indemnity with regard to Mr. Lee's lawsuit. Central Gulf then sought to obtain reimbursement from Maxtec pursuant to the indemnity provisions of the Marine Master Service

---

[6] The only possible exception to this premise is the somewhat obtuse argument concerning "indirect tort liability," which is addressed below.

Contract between Central Gulf and Maxtec. Central Gulf also, entered a claim against ALEA, as Maxtec's CGL insurer, under the Louisiana Direct Action statute. Central Gulf invokes the Marine Master Service Contract entered into between Central Gulf and Maxtec which all parties agree, required Maxtec to reimburse Central Gulf for sums expended by Central Gulf on behalf of Global. Thereafter, Maxtec made demand upon ALEA as an insured under the CGL Policy, for reimbursement of sums Maxtec owed pursuant to its contract with Central Gulf to Central Gulf; ALEA denied Maxtec's demand. ALEA now seeks a declaration that there is no coverage, under the CGL Policy, for Maxtec's contractual obligation to reimburse Central Gulf for sums paid by Central Gulf to, or on behalf of, Global.

### A. The CGL Policy clearly excludes coverage for Maxtec's obligation to Central Gulf.

The parties are in agreement that Louisiana law applies to the interpretation of the CGL Policy at issue. This conclusion appearing to be well-founded in the law and in the facts, this Court will accept that its interpretation of the insurance policy should be controlled by Louisiana law. The Fifth Circuit has provided a succinct description of the general rules of interpretation which apply to Louisiana insurance contracts:

> Under Louisiana law, interpretation of an insurance policy is subject to the general rules of contract interpretation which requires juridical determination of the common intent of the parties to the contract. The intent of the parties, as reflected by the words in the policy, determine the extent of coverage. We construe the words of an insurance policy by applying their 'general, ordinary, plain, and proper meaning. . . unless they have acquired a technical meaning.
>
> Exclusions to coverage contained in an insurance policy must be clearly and expressly set forth. When the language of an insurance policy is clear, it must be enforced as written. If, however, the terms of the policy are ambiguous, they must be construed against the drafter of the policy. Therefore, in the event the words contained in an exclusionary clause are susceptible to greater than one reasonable

interpretation, we must adopt the interpretation that provides coverage to the insured. Thermo Terratech v. GDC Enviro-Solutions, Inc., 265 F.3d 329, 334-35 (5th Cir. 2001) (internal quotations omitted).

The policy at issue is one for commercial general liability; it provides Maxtec with coverage for "those sums that the insured becomes legally obligated as damages because of 'bodily injury' or 'property damage' to which the insurance applies."[7] This coverage is subject to exclusions, however, and the policy contains an exclusion specifically directed at contractual liability. "This insurance does not apply to . . . 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[8] Despite this exclusion, the policy does provide for contractual liability coverage under certain circumstances. "This exclusion does not apply to liability for damages . . . assumed in a contract or agreement that is an 'insured contract.'"[9] An "insured contract" is "that part of any other contract or agreement pertaining to your business. . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."[10] "Tort liability" is then defined as "liability that would be imposed by law in the absence of any contract or agreement."[11]

The plain, unambiguous language of the policy clearly limits Maxtec's contractual liability

---

[7] CGL Policy, at 1 of 13, Section I(1). "The insured" is defined as "any person or organization qualifying as such under Section II - Who is an Insured," which specifically includes Maxtec, Inc. CGL Policy, at 1 of 13.

[8] CGL Policy, at 1 of 13, Section I(2)(b).

[9] Id.

[10] CGL Policy, at 11 of 13, Section IV(9)(f).

[11] Id.

coverage: only the tort liability of another may be assumed by Maxtec and included for coverage under the CGL Policy. The facts of this case are also relatively straightforward and uncontested. Maxtec is the insured whose coverage is the basis for Central Gulf's claim against ALEA and ALEA's request for declaratory judgment. Maxtec's claim under the CGL Policy is not keyed to liability due to "bodily injury" under the general insuring provisions, but to contractual liability coverage noted under Exclusion 2. Even assuming – as the parties have done for purposes of this motion – that Maxtec has an obligation to reimburse Central Gulf for sums that Central Gulf has paid or will pay on behalf of Global, Central Gulf's obligation is contractual in nature, and not tort-based. It is also undisputed that Central Gulf is not, at this time, claiming exposure to any potential tort-based liability. Thus, while it is true that Jarvis Lee – whose claims initiated the sequence of events leading to this action – has asserted tort-based claims arising out of his alleged bodily injury, it is also clear that Global (not Maxtec and not Central Gulf) is the only party, at present, exposed to that tort liability.

The CGL policy arguably provides contractual coverage to Maxtec for tort-based liability transferred from Central Gulf to Maxtec by virtue of the Master Service Contract between them, and it also, however excludes coverage for the transfer of contract-based obligations as here, from Central Gulf to Maxtec by virtue of that same Master Service Contract. Because the CGL policy arguably *provides* contractual liability coverage under certain circumstances and *excludes* it in others – and because the distinction between coverage or exclusion turns upon the nature of the liability assumed, *i.e.* whether the liability would be imposed upon Maxtec's obligee in the absence of any contract or agreement – it is necessary that this Court make a determination as to the nature of the liability being transferred from Central Gulf to Maxtec through the mechanism of the contract

between them. As the brief discussion of the facts set forth hereinabove indicates, it is clear that the liability that Maxtec has assumed from Central Gulf is Central Gulf's contractual obligation to Global, *i.e.*, contract-based, not tort-based (at least in the policy's terms), because Central Gulf would not have incurred that liability in the absence of its Marine Master Service Contract with Global.

For the foregoing reasons, this Court finds that ALEA has sustained its burden of proving there are no genuine issues of material fact and that it is entitled to judgment as a matter of law as to the claim now made by Maxtec for coverage under the ALEA policy for Maxtec's potential contractual liability to Central Gulf for Central Gulf's potential contractual liability to Global. If summary judgment is to be avoided, the opposing parties must demonstrate that the issuance of summary judgment is inappropriate in some way. In their effort to do so, the defendants have made two legal arguments and submitted one affidavit.

### B.    Non-Controlling Precedent

All of the parties to the motion have made arguments based upon jurisprudence which is not controlling. This Court, nonetheless has briefly reviewed the North Dakota Supreme Court case cited by Central Gulf, but finds no reason for concluding that its analysis – although undoubtedly very well suited to North Dakota law and the facts of that case – is applicable, persuasive, or helpful in analyzing the issues at bar.

Both defendants rely heavily upon the opinion issued in <u>Premiere, Inc. v. Commercial Underwriters Insurance Company</u>, 2003 WL 21634953(E.D.La.). In that case, the District Court found, under substantially similar facts and circumstances, that the CGL Policy at issue provided coverage, finding the insured was exposed to "indirect tort liability," albeit by way of contract. In

response, ALEA has brought to this Court's attention a ruling out of the Western District of Louisiana, which appears to be in direct conflict with that of the Eastern District, and which arose out of the same dispute in which the Premiere decision was issued. "Santa Fe Energy Resources, Inc. v. Premiere, Inc.," Docket No. 01-0226 (W.D.La. 2002). Thus, there are conflicting district court opinions. It is well-established that district courts are not bound to follow the opinions, precedents, or analyses of their sister courts (just as no appellate court is obligated to follow the precedent of a sister circuit). While either district court opinion may be used by this Court as guidance if either were deemed helpful or persuasive on the issues, this Court is not obligated to rely on either.

C.  **Indirect Tort Liability**

In arguing for a theory of coverage under the CGL Policy, the defendants rely upon the creative concept of "indirect tort liability." They seek to have this Court characterize Maxtec's contractual liability to Central Gulf as "indirect tort liability," rather than as contractual liability. Though relying heavily upon this concept, the defendants have not provided a clear definition of the argued concept, nor referred this Court to jurisprudence (except for the decision in Premiere) to demonstrate such a concept is recognized or viable under the applicable Louisiana law of contract or tort. In the absence of any guidance from the parties as to existence, the nature, role, and purpose of "indirect tort liability," this Court conducted an independent search of the jurisprudence for any and all references to the concept. The Premiere decision was the only result of a search of the jurisprudence from *all* federal decisions from 1945 forward for the concept of "indirect tort liability."[12] Thus, the jurisprudence does not provide assistance or guidance as to the existence, or

---

[12] A similar search of all state opinions issued in the United States since 1945 yielded references to only two cases: one in Colorado and one in Louisiana. See Williams v. White Mountain Construction Company, Inc., 749 P.2d 423 (Colo. 1988); Reed v. Yor-Wil, Inc.,

meaning, of the concept.

Even if the concept had been clearly defined by the jurisprudence, however, the defendants have not presented argument or support sufficient to reconcile such a concept with the actual language in this CGL Policy. As noted above, the contractual liability coverage extended to Maxtec applies only to contracts which assume *tort liability*, which is then defined as "liability that would be imposed *by law in the absence of any contract or agreement*."[13] (emphases added.) Defendants have produced no jurisprudence or support for their argument that "indirect tort liability," would be imposed upon Maxtec *under applicable law* – to the contrary, the facts as presented establish *Maxtec's* liability to Central Gulf is based under contract and not tort. Thus, no basis has been presented upon which this Court could determine "indirect tort liability" should be included within the contractual liability coverage in the CGL Policy, given the express language of the policy.

The defendants also argue the contractual liability exclusion is nonetheless, ambiguous *as a matter of law* for failing to address the amorphous concept of indirect tort liability and therefore, the provision should be interpreted in favor of Maxtec and coverage. The defendants are correct that ambiguous language in an insurance policy – particularly ambiguity in an exclusion – is to be interpreted in favor of the insured and against the insurer. "[I]n the event the words contained in an exclusionary clause are susceptible to greater than one reasonable interpretation, we must adopt the interpretation that provides coverage to the insured." Thermo Terratech, 265 F.3d at 335. However,

---

406 So.2d 236 (La.App. 1 Cir. 1981). In both of these cases, the concept of "indirect tort liability" arose when the courts were discussing employees' efforts to impose liability upon their employers notwithstanding worker compensation statutes by suing their co-employees (or other agents of the employer). Thus, this Court does not find its use within that context to shed light upon the defendants' arguments in this case.

[13]   CGL Policy, at 11 of 13, Section IV(9)(f).

-14-

ambiguity is not presumed or created out of unsupported argument; it must be proven to exist within the provisions of the contract itself. "Importantly, Louisiana law does not allow the parties to create an ambiguity where none exists and *does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties.*" Shocklee v. Massachusetts Mutual Life Insurance Company, 369 F.3d 437, 440 (5th Cir. 2004) (citations omitted) (emphasis added). "Under Louisiana law, a contract is ambiguous when the contract is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." Id.

The defendants have not identified any ambiguity, rather have argued the failure to address an unsupported and heretofore unrecognized, potential, legal theory - the "indirect tort liability" question - creates an ambiguity. While it is conceivable that an insurer's failure to address an issue – the choice to leave a matter open to interpretation - could create an ambiguity as to coverage that would favor an insured, such a choice cannot be read into the actions of an insurer when the concept at issue is one not heretofore found within the existing and applicable law. The jurisprudence in this country did not, for at least 60 years (until the Premier decision was issued in 2003) give an insurer in this country any reason to believe that the now argued concept of "indirect tort liability" existed, nor was there any basis upon which a reasonable insurer should have been on notice of a need to address an heretofore unknown concept. This Court will not conclude that an insurer's failure to address an heretofore unknown concept constitutes an ambiguity in an otherwise clear and unambiguous policy provision.

Defendant provides no jurisprudence interpreting the term "tort liability" to include the argued "indirect tort liability" nor, despite a concerted effort to do so, has this Court discovered any

jurisprudentially-based definition of the concept or guidance as to its use. Given the results of this Court's research, it is clear that the term is neither commonly known nor commonly used. In the absence of any evidence, information, or explanation as to how there might be any confusion as to the meaning of the term "tort liability" as defined in this CGL Policy, there is no basis for this Court to conclude that the policy language is ambiguous as a matter of law. Further, defendant's argument, if accepted and taken to its logical conclusion, could lead to the absurd result of reading out any contractual liability exclusion if the contract at issue addresses another's tort liability.

This Court finds, thus, that the arguments founded upon the concept of "indirect tort liability" are not sufficient to sustain the defendants' burden of demonstrating that issuance of summary judgment in favor of ALEA would be inappropriate.

### D. Parol Evidence

Finally, Maxtec has submitted an affidavit by its owner, Jim Gaspard, concerning his understanding as to the scope of the contractual liability coverage he purchased from ALEA. As Maxtec has acknowledged, parol evidence is not admissible in interpreting the intentions of the parties to a contract until and unless a determination is made that one or more terms in the contract is ambiguous. "Under Louisiana law, when the words of a contract are clear and explicit and lead to no absurd results, no further interpretation may be made in search of the parties' intent. As a result, if a contract is unambiguous on its face, the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." Shocklee v. Massachusetts Mutual Life Insurance Company, 369 F.3d 437, 440 (5th Cir. 2004) (citations omitted).

This Court has concluded that there is no relevant ambiguity in the ALEA policy. Therefore,

under Louisiana law, the parol evidence is not admissible. Mr. Gaspard's affidavit will not be considered by this Court. It cannot, therefore, be used as a basis for finding that the defendants have sustained their burden in response to ALEA's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, this Court finds that:

(a) ALEA London Limited's request for declaratory judgment as to Central Gulf's status as an alleged insured arising out of Mr. Lee's lawsuit is not ripe at this time and, therefore, not justiciable, and will be dismissed without prejudice; and

(b) ALEA London Limited has sustained its burden of demonstrating that there is no genuine issue of material fact as to Maxtec's claim for contractual liability coverage under the facts of this case and that it is entitled to judgment in its favor declaring there is no coverage for Maxtec, Inc.'s claim for coverage of its contractual liability owed to Central Gulf Shipyard, L.L.C. for Central Gulf's contractual liability owed to Global, for sums incurred by Central Gulf in defending and/or indemnifying Global Industries Offshore, L.L.C. and/or Global Industries Limited for claims asserted against the Global entities by Jarvis Lee.

Based upon these findings, the motion for summary judgment will be GRANTED IN PART and

DENIED IN PART.[14]

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___30___ day of ___March___, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[14] As Central Gulf's counterclaim against ALEA London Limited seems to consist of the mirror image of ALEA's request for declaratory relief concerning Maxtec's contractual coverage under the CGL Policy, it would seem that this ruling will, as a practical matter, effect a ruling on Central Gulf's claim, as well as ALEA's request for declaratory judgment. However, this Court has not been presented with any procedural mechanism for ruling on Central Gulf's claim, the instant ruling does not purport to address that claim at this time.